12-5020

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

JAMES H. ROANE; RICHARD TIPTON; CORY JOHNSON,

*Plaintiffs - Appellees*

JEFFREY PAUL,

*Movant - Appellant*

BRUCE WEBSTER; ANTHONY BATTLE; ORLANDO HALL,

*Intervenors for Plaintiffs - Appellees*

—against—

KAREN P. TANDY, ADMINISTRATOR, DRUG ENFORCEMENT ADMINISTRATION;
CHARLES E. SAMUELS, JR., DIRECTOR, FEDERAL BUREAU OF PRISONS; NEWTON E.
KENDIG, II, MEDICAL DIRECTOR, HEALTH SERVICES DIVISION, FEDERAL BUREAU OF
PRISONS; RICHARD VEACH, WARDEN, U.S. PENITENTIARY TERRE HAUTE; JOHN
DOES, I-V, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES; THOMAS WEBSTER,
M.D. - CLINICAL DIRECTOR; ERIC H. HOLDER, JR., ATTORNEY GENERAL FOR THE
UNITED STATES OF AMERICA,

*Defendants - Appellees*,
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

### BRIEF FOR MOVANT - APPELLANT

Abbe David Lowell
Keith M. Rosen
**CHADBOURNE & PARKE LLP**
1200 New Hampshire Ave. NW
Washington, DC  20036
(202) 974-5600

*Attorneys for Movant - Appellant*

**CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES**

**PARTIES:**

The movant-appellant is Jeffrey Paul, a federal death row inmate incarcerated at Terre Haute Penitentiary in Terre Haute, Indiana.

The defendants-appellees are Eric H. Holder, Jr., Attorney General for the United States of America; Karen P. Tandy, Administrator, Drug Enforcement Administration; Charles E. Samuels, Jr., Director, Federal Bureau of Prisons; Newton E. Kendig, II, Medical Director, Health Services Division, Federal Bureau of Prisons; Richard Veach, Warden, U.S. Penitentiary, Terre Haute; John Does, I-V, Individually and in their official capacities; and Thomas Webster, M.D. - Clinical Director.

James H. Roane, Richard Tipton and Cory Johnson, all federal death row inmates incarcerated at Terre Haute Penitentiary, were the original plaintiffs in the underlying case. Bruce Webster, Anthony Battle and Orlando Hall, all federal death row inmates incarcerated at Terre Haute Penitentiary, have intervened on the side of plaintiffs.

**RULINGS UNDER REVIEW**

The ruling at issue on appeal is the denial of Jeffrey Paul's Motion to Intervene as of Right or for Permissive Intervention in *Roane et. al., v. Gonzales, et al.*, 269 F.R.D. 1 (D.D.C. 2010) (JA222).

**RELATED CASES:**

A motions panel of this Court previously remanded this matter for further findings by the District Court, and subsequently denied Defendants-Appellees' Motion for Summary Affirmance and Appellant's Motion for Summary Reversal. This case has not otherwise been before this Court. Counsel for the appellant are unaware of any cases that may be considered related for purposes of this rule.

## Table of Contents

Page

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION .......................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................1

PERTINENT STATUTES AND REGULATIONS ...............................1

STATEMENT OF THE CASE .............................................................2

STATEMENT OF FACTS ....................................................................4

    A.  Procedural History Prior to Paul's Motion to
        Intervene ...............................................................................4

    B.  Paul's Motion To Intervene.................................................10

    C.  Subsequent Procedural History in *Roane* ..........................12

SUMMARY OF ARGUMENT ...........................................................14

STANDARD OF REVIEW .................................................................16

ARGUMENT.......................................................................................17

I. The District Court Erred In Denying Paul's Motion For
Intervention As Of Right.................................................................17

    A.  The District Court Misapplied The Timeliness
        Standard................................................................................19

    B.  The District Court Erred In Its Analysis Of
        Impairment ...........................................................................27

    C.  The District Court Misapplied The Adequacy Of
        Representation Standard .......................................................33

II. The District Court Erred in Denying Paul's Motion For
Permissive Intervention ..................................................................37

CONCLUSION ...................................................................................42

Table of Authorities

Page

**CASES**

*Alternative Research & Dev. Found. v. Veneman,*
262 F.3d 406 (D.C. Cir. 2001) ...................................................1, 38

*Baze v. Rees,*
553 U.S. 35 (2008)..................................................................10, 13

*Dimond v. District of Columbia,*
792 F.2d 179 (D.C. Cir. 1986) .........................................................33

*Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr., Inc.,*
146 F.3d 1042 (D.C. Cir.1998) ...................................................38, 41

\* *Fund for Animals, Inc. v. Norton,*
322 F.3d 728 (D.C. Cir. 2003) ....................................16, 17, 18, 27, 28, 33, 34

*Hall v. United States,*
2004 WL 1908242 (N.D. Tex. Aug. 24, 2004).......................................7

*Hall v. United States,*
526 U.S. 1117 (1999).....................................................................7

*Hall v. United States,*
549 U.S. 1343 (2007).....................................................................7

*Hill v. McDonough,*
547 U.S. 573 (2006).......................................................................9

\* *Hodgson v. United Mine Workers,*
473 F.2d 118 (D.C. Cir. 1972) ....................................20, 22, 23, 25

*In re Pope,*
580 F.2d 620 (D.C. Cir. 1978) .........................................................32

*Janusziewicz v. Sun Shipbuilding & Dry Dock Co.,*
677 F.2d 286 (3rd Cir. 1982) .........................................................23

*Jones v. Allen,*
483 F. Supp. 2d 1142 (M. D. Ala. 2007)...........................................32

**Authorities upon which we chiefly rely are marked with asterisks.**

Table of Authorities
(continued)

Page

*Karsner v. Lothian*,
532 F.3d 876 (D.C. Cir. 2008) ..................................................................1, 18

*Kickapoo Tribe of Indians v. Babbitt*,
43 F.3d 1491 (D.C. Cir. 1995) ..............................................................17, 27

*LaRouche v. Federal Bureau of Investigation*,
677 F.2d 256 (2d Cir. 1982) ..........................................................................23

*League of Latin Amer. Citizens v. Wilson*,
131 F.3d 1297 (9th Cir. 1997) ......................................................................39

*Mova Pharm. Corp. v. Shalala*,
140 F.3d 1060 (D.C. Cir. 1998) ....................................................................18

*NAACP v. New York*,
413 U.S. 345 (1973) .......................................................................................20

* *Nat'l Res. Def. Council v. Costle*,
561 F.2d 904 (D.C. Cir. 1977) ....................................................20, 21, 22, 25

*Paul v. United States*,
130 S. Ct. 51 (2009) .....................................................................................5, 6

*Paul v. United States*,
534 F.3d 832 (8th Cir. 2008) .......................................................................4, 5

*Paul v. United States*,
534 U.S. 829 (2001) ..........................................................................................4

*SEC v. Prudential Sec. Inc.*,
136 F.3d 153 (D.C. Cir. 1998) ........................................................18, 38, 39

*Smith v. Johnson*,
2006 WL 644424 (S.D. Tex. Feb. 13, 2006) ...............................................32

* *Smoke v. Norton*,
252 F.3d 468 (D.C. Cir. 2001) .................................................................20, 21

* *Trbovich v. United Mine Workers*,
404 U.S. 528 (1972).......................................................................................33

Table of Authorities
(continued)

Page

*United States v. AT&T*,
 642 F.2d 1285 (D.C. Cir. 1980) ....................................................33

*United States v. Hall*,
 152 F.3d 381 (5th Cir. 1998)....................................................7

*United States v. Hall*,
 455 F.3d 508 (5th Cir. 2006)....................................................7

*United States v. Paul*,
 217 F.3d 989 (8th Cir. 2000) ....................................................4

*United States v. Webster*,
 392 F.3d 787 (5th Cir. 2004)....................................................6

*William & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*,
 840 F.2d 72 (D.C. Cir. 1988) ....................................................18

**STATUTES**

28 U.S.C. § 1291....................................................1

28 U.S.C. § 1391(e)(1)....................................................32

28 U.S.C. § 2254....................................................9

28 U.S.C. § 2255....................................................4

42 U.S.C. § 1983....................................................9, 32

**RULES**

Federal Rule of Civil Procedure 24 ....................................................1, 3, 14, 17, 37

**OTHER AUTHORITIES**

Wright & Miller, *Federal Practice and Procedure* § 1908.2 (3d ed. 2012).....27, 28

## STATEMENT OF JURISDICTION

The District Court denied the motion of Movant-Appellant Jeffrey Paul [hereinafter "Paul"] to intervene on July 1, 2010.  JA222.   Paul timely filed a motion for reconsideration on July 8, 2010.  JA235.  The District Court denied Paul's motion for reconsideration on December 29, 2011.  JA267.  Paul timely filed a notice of appeal on January 28, 2012.  JA278.  An order denying a motion to intervene is a final, appealable decision.  *Alternative Research & Dev. Found. v. Veneman*, 262 F.3d 406, 409-10 (D.C. Cir. 2001).  This court has jurisdiction over an appeal of an order denying intervention pursuant to 28 U.S.C. § 1291.  *Karsner v. Lothian*, 532 F.3d 876, 884 n.7 (D.C. Cir. 2008) (citing *Acree v. Republic of Iraq*, 370 F.3d 41, 49 (D.C. Cir. 2004)).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether the district court erred in denying Paul's motion to intervene as of right under Federal Rule of Civil Procedure 24(a).

2.    Whether the district court erred in denying Paul's motion for permissive intervention under Federal Rule of Civil Procedure 24(b).

## PERTINENT STATUTES AND REGULATIONS

The pertinent rule is Federal Rule of Civil Procedure 24.

## STATEMENT OF THE CASE

The instant appeal arises out of a complaint filed on December 6, 2005, by three federal death row inmates challenging, *inter alia*, the constitutionality of the federal government's lethal injection protocol.  The underlying case is still procedurally in its early stages and has been administratively stayed at various times over the past seven years.  Discovery has not yet been completed, and there is no case management plan currently in place that sets out a schedule for the completion of discovery, dispositive motions, or a trial date.

Approximately one year after the complaint was filed, three other death row inmates moved to intervene in this case.  *See* JA114, 128, 142.  The District Court granted those applications, which were unopposed by the government.  *See* JA3, 6.  Like the plaintiffs and the three other intervenors in the underlying case, Paul also sits on federal death row.  The day after the Supreme Court denied *certiorari* in his post-conviction Section 2255 proceedings, Paul filed his motion to intervene in the underlying suit.  JA189.  But unlike the three previous intervenors, Paul's motion was opposed by the government (JA203), and was ultimately denied by the District Court.  JA222.  The District Court denied his motion despite acknowledging "it may be that Paul's intervention would not disrupt the current litigation to the detriment of the existing parties."  JA229.

2

Paul timely filed a notice of appeal of the District Court's Order on January 28, 2012.  JA278.  The government filed a motion for summary affirmance on March 15, 2012, which Paul opposed.  On July 6, 2012, a panel of this Court deferred its ruling on the motion for summary affirmance, and vacated and remanded the District Court's order for clarification of the court's ruling on permissive intervention.  The panel explained that the District Court failed to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Order, July 6, 2012; *see* Fed. R. Civ. P. 24(b)(3).

On remand, the District Court once again denied Paul's motion for permissive intervention, stating that it had considered "Paul's claim that his intervention would not disrupt the current litigation of the existing parties could be right" but "found the claim to be risky speculation."  *See* JA287-88.  In the District Court's view, that "risky speculation" was "not enough to overcome and outweigh Paul's substantial failure to satisfy the timeliness requirement."  JA288.  The District Court restated its previous holding that the main defect in Paul's motion to intervene, be it as of right or permissive, was that he had waited until after the denial of his petition for *certiorari* as to his Section 2255 petition to intervene, and had not sought to challenge the federal execution protocol after the completion of his appeal of his conviction, or sought to intervene closer to the initial filing of the *Roane* complaint.  JA289.

On November 30, 2012, this Court returned the case to the active docket and directed the parties to file motions to govern by December 31, 2012. Order, November 30, 2012. Paul moved for summary reversal, and both parties filed motions to govern and responses. On March 12, 2013 this Court denied both the government's motion for summary affirmance and Paul's motion for summary reversal, stating that "[t]he merits of the parties' positions are not so clear as to warrant summary action." Order, March 12, 2013.

## STATEMENT OF FACTS

**A.    Procedural History Prior to Paul's Motion to Intervene**

   1.    **Paul's Criminal Case**

On June 23, 1997, Paul was convicted in the United States District Court for the Western District of Arkansas of aiding and abetting a murder that occurred in Hot Springs National Park. *See United States v. Paul*, 217 F.3d 989 (8th Cir. 2000). On June 25, 1997, Paul was sentenced to death. *Id.* at 995. The Eighth Circuit affirmed his sentence on August 30, 2000. *Id.* at 1005. The Supreme Court denied *certiorari* on October 1, 2001. *See Paul v. United States*, 534 U.S. 829 (2001).

Paul thereafter sought post-conviction relief under 28 U.S.C. § 2255. *See Paul v. United States*, 534 F.3d 832 (8th Cir. 2008). The District Court denied his petition on January 31, 2005. *Id.* at 836. The Eighth Circuit granted a certificate

of appealability but subsequently denied relief. *Id*. at 834, 854. The Supreme Court denied Paul's petition for *certiorari* on October 5, 2009. *See Paul v. United States,* 130 S. Ct. 51 (2009).

### 2. The *Roane* Complaint

On December 6, 2005, while Paul's *habeas* petition was pending, plaintiffs James H. Roane, Jr., Richard Tipton, and Cory Johnson (hereinafter "the *Roane* plaintiffs"), all similarly sentenced to death under federal law, filed the instant in the District Court complaint (hereinafter "the *Roane* litigation") challenging the legality and constitutionality of the federal lethal injection protocol. *See* JA39. All of the *Roane* plaintiffs had been convicted of murder and sentenced to death in 1993 in the United States District Court for the Eastern District of Virginia. JA45 Their convictions were affirmed on appeal in 1996. *Id*. The United States District Court for the Eastern District of Virginia granted Roane's *habeas* petition in part in 2003, while denying the petitions of Tipton and Johnson. *Id*. The United States Court of Appeals for the Fourth Circuit reversed the District Court's grant of relief as to Roane, affirmed the District Court's other findings, and on October 3, 2005, the Supreme Court denied *certiorari*. *Id*. On February 27, 2006, the lower court granted a preliminary injunction barring the *Roane* plaintiffs' executions and staying further proceedings. *See* JA76.

### 3.     Three Other Death Row Inmates are Permitted to Intervene

On January 29, 2007, Bruce Webster, another federal death row inmate, moved to intervene in the *Roane* litigation.  JA114.  Webster had been convicted of kidnapping resulting in death on June 11, 1996, in the United States District Court for the Northern District of Texas.   JA117.   His direct appeal and petition for *certiorari* were denied on December 3, 1998, and October 4, 1999, respectively.  *Id.*  Webster then brought a Section 2255 petition, which was also denied.  His appeal and petition for *certiorari* of that decision were denied on December 7, 2004 (*United States v. Webster*, 392 F.3d 787, 802 (5th Cir. 2004) and October 2, 2006, respectively.  JA117.  Only after the litigation of his Section 2255 petition concluded did Webster seek to intervene in the *Roane* litigation.

The government did not oppose Webster's motion to intervene in the *Roane* litigation, and the motion was granted on February 14, 2007.  JA3.  The District Court also granted Webster's motion to stay his execution.  *Id.*.

On April 26, 2007, Anthony Battle, another federal death row inmate, moved to intervene in the *Roane* litigation.  JA128.  Battle had been convicted of murder in 1997 in the United States District Court for the Northern District of Georgia.  JA131.  On April 28, 1999, the Eleventh Circuit Court of Appeals affirmed Battle's conviction and death sentence, and his petition for *certiorari* was denied on March 19, 2000.  *Id.*  On October 1, 2001 Battle filed a *habeas* petition,

which was denied on April 30, 2003. *Id*. On August 10, 2005, the Court of Appeals for the Eleventh Circuit upheld the denial of Battle's *habeas* petition, and the Supreme Court denied *certiorari* on April 16, 2007. *Id*. Only after that *certiorari* petition was denied did Battle move to intervene in the *Roane* litigation.

Like Webster, the government did not oppose Battle's motion to intervene and the motion was granted on June 4, 2007. JA6. The District Court also granted Battle's motion to stay his execution.

On April 26, 2007, Orlando Hall, another federal death row inmate, also moved to intervene in the *Roane* litigation. JA142-43. Hall was convicted in 1995 in the United States District Court for the Northern District of Texas for, among other offenses, kidnapping resulting in death. *United States v. Hall*, 152 F.3d 381, 390 (5th Cir. 1998). On August 28, 1998 the Court of Appeals for the Fifth Circuit affirmed Hall's conviction (*Id.* at 427), and on May 17, 1999 the Supreme Court denied *certiorari*. *Hall v. United States*, 526 U.S. 1117 (1999). On May 16, 2000, Hall filed a *habeas* petition, which the District Court for the Northern District of Texas denied on August 24, 2004. *Hall v. United States*, 2004 WL 1908242 (N.D. Tex. Aug. 24, 2004). The Fifth Circuit affirmed the denial of Hall's *habeas* petition on July 5, 2006. *United States v. Hall*, 455 F.3d 508 (5th Cir. 2006). On April 16, 2007, the Supreme Court denied Hall's petition for *certiorari*. *Hall v. United States*, 549 U.S. 1343 (2007).

As with the two previous intervenors, the government did not oppose Hall's motion, which was granted on June 4, 2007.  JA6.  The District Court also granted Hall's motion to stay his execution.

Like Paul, each of the three intervenors described above moved to intervene only after the Supreme Court had denied their petitions for *certiorari* as to their Section 2255 petitions.  Like Paul, they did not seek to challenge the federal execution protocol after their direct appeals had concluded.  Fully seven years elapsed between the conclusion of their direct appeals and the conclusion of their post-conviction proceedings.  The chronologies of the intervenors, by comparison to Paul, are summarized below:

| Intervenor | Trial Court Conviction | Direct Appeal Concluded | Habeas Concluded | Motion to Intervene Filed | State of Conviction |
|---|---|---|---|---|---|
| Bruce Webster | June 11, 1996 | Oct. 4, 1999 | Oct. 2, 2006 | Jan. 29, 2007 | Texas |
| Orlando Hall | Oct. 31, 1995 | May 17, 1999 | April 16, 2007 | April 26, 2007 | Texas |
| Anthony Battle | Mar. 12, 1997 | Mar. 20, 2000 | April 16, 2007 | April 26, 2007 | Georgia |
| Jeff Paul | June 23, 1997 | Oct. 1, 2001 | Oct. 5, 2009 | Oct. 6, 2009 | Arkansas |

4.    **Administrative Stays and Other Delays in the *Roane* Litigation**

Between 2005, when the *Roane* complaint was filed, and October 6, 2009, when Paul moved to intervene, the litigation progressed at a slow pace due largely

8

to a series of stays granted by the District Court to await then-pending Supreme Court decisions. In fact, at the time Paul sought intervention, the parties were still engaged in discovery motions practice. *See, e.g.* JA25.

The first stay in the case was granted by the District Court shortly after the complaint was filed, to await the outcome of *Hill v. McDonough*, 547 U.S. 573 (2006). JA76. *Hill* addressed whether or not the challenge to the method by which a federal inmate was to be executed was equivalent to a *habeas* challenge to the lawfulness of the execution itself. Following the Supreme Court's decision in *Hill*,[1] the *Roane* plaintiffs filed an amended complaint on July 10, 2006. *See* JA82. The government then filed three consent motions for extension of time to file an answer to the amended complaint, ultimately filing an answer and a partial motion to dismiss on November 9, 2006. *See* JA2. It was at this point in the *Roane*

---

[1] The Supreme Court granted *certiorari* in *Hill v. McDonough* to determine whether an inmate on death row could challenge the method of his execution under 42 U.S.C. § 1983 as a civil rights action instead of under 28 U.S.C. § 2254, the statute that authorizes writs of *habeas corpus*. *Hill*, 547 U.S. 573, 576. The Supreme Court held that such an action which, "if successful would not necessarily prevent the State from executing [the inmate] by lethal injection" and "leave the State free to use an alternative lethal injection procedure," such an action would be allowed to proceed as a civil rights action. *Id*. at 580-81.

litigation that Webster, Battle, and Hall were permitted to intervene without objection from the government.

On February 5, 2008, the District Court again halted the case, ordering the *Roane* litigation "administratively closed" until the Supreme Court decided *Baze v. Rees*, 553 U.S. 35 (2008).[2] *See* JA14. For the next fourteen months, activity in the case was limited to status updates and procedural motions, with the exception of renewed dispositive motions filed by the government on May 16, 2008. *See* JA16. Nearly one year later, on April 20, 2009, the District Court issued an opinion denying in part the government's motion for judgment on the pleadings and granting in part and denying in part the government's renewed motion to dismiss. *See* JA163.

**B.    Paul's Motion To Intervene**

On October 6, 2009, the day after the Supreme Court denied *certiorari* in his post-conviction proceedings, Paul filed a motion to intervene in the *Roane* litigation. JA189. In support of his motion, Paul made clear that he "[did] not seek

_____

[2]    In *Baze*, the Kentucky state lethal injection protocol was challenged on the grounds that there was a risk that, if improperly administered, the protocol would result in significant pain, constituting "cruel and unusual punishment[]." 553 U.S. at 40. The Court denied the Eighth Amendment challenge to the Kentucky law. *Id.* at 56.

to reopen discovery or revisit any of the procedural issues that have heretofore been decided by the Court." JA192.[3] Rather, Paul merely sought to join those challenging the protocol under which he would be executed, as Webster, Hall, and Battle had done previously.

The District Court denied Paul's motion to intervene by Memorandum Opinion and Order dated July 1, 2010, based primarily on its finding that Paul's motion was "untimely." JA232. Applying the four-factor test for establishing intervention as of right under Federal Rule of Civil Procedure 24(a), the Court found that Paul had "a clear interest in the outcome" in the *Roane* litigation (JA226), but held that intervention was not warranted because Paul's motion was untimely, that interest would not be impaired by denying intervention, and that his interest would be adequately represented by the other parties. JA231-32. The Court addressed all four factors of the test despite acknowledging, at the outset of its opinion, that the government had addressed only one of the factors, whether denying intervention would impair Paul's interest. JA224-25.

---

[3] The other intervenors similarly stipulated that they would enter the litigation "in its current posture, without adding any new claims, and without renewed briefing on motions pending before, or previously resolved by, the Court." JA156.

The Court also denied Paul's motion for permissive intervention under Federal Rule of Civil Procedure 24(b) on the same grounds, namely that his motion was untimely. *See* JA232. In denying Paul's motion for permissive intervention, the Court did not address whether Paul's alleged delay in seeking to intervene would prejudice or otherwise affect the parties to the underlying suit.

Following the District Court's denial of his motion to intervene, Paul filed a timely motion for reconsideration on July 8, 2010. *See* JA235. The District Court denied the motion almost a year and half later, on December 29, 2011. *See* JA267. On December 22, 2010, while the motion to reconsider the denial of intervention was pending, the government filed a notice of its intent to set an execution date for Paul no sooner than April 22, 2011. *See* JA254-55. The notice asserted that "as of this date, Paul is not a party to [the *Roane*] suit nor has he received a stay barring his execution in another jurisdiction." JA254.

## C.    Subsequent Procedural History in *Roane*

In the two and a half years since the District Court denied Paul's motion to intervene, very little has happened in the underlying case. On April 14, 2011, the parties advised the Court that the government might have to revise its lethal injection protocol due to the unavailability of sodium thiopental, one of the three chemicals specified in the federal lethal injection protocol. *See* JA257. On July 28, 2011 -- while Paul's motion for reconsideration was still pending before the

District Court -- the government informed the Court that the Bureau of Prisons had decided to modify the protocol but that no protocol provisions had been finalized. *See* JA262.  At the request of the parties, activity in the case has been limited since that time to the filing of monthly status reports by the government as it seeks to finalize a revised protocol.  *See* JA34.

On November 3, 2011, the government informed the District Court that the Bureau of Prisons had been unable to move forward on the process of finalizing the revisions to the protocol because two integral positions, the Director of the Bureau of Prisons and the Regional Director for the North Central Region (who has responsibility for the United States Penitentiary-Terre Haute), were vacant. *See* JA280.  Between February 2, 2012, and April 2, 2012, respectively, the government informed the District Court that those positions had been filled. *Id;* JA282-83; JA285.

For the past year, all subsequent Status Reports have stated that "[t]he Department of Justice and the Bureau of Prisons are continuing to assess matters as relates to revision or amendment of the Bureau's lethal injection protocol due to the unavailability of sodium thiopental used in the current protocol." *See, e.g.,* JA291.  Unlike the plaintiffs (including the other intervenors) in this case, Paul would be at imminent risk of execution if the government successfully revises its protocol because his execution has not yet been stayed.

13

## SUMMARY OF ARGUMENT

The District Court committed an abuse of discretion in denying both Paul's motion to intervene as of right under Fed. R. Civ. P. 24(a), and his motion for permissive intervention under Fed. R. Civ. P. 24(b). In both instances, the District Court did not properly apply the relevant multi-factor tests, instead utilizing an erroneous definition of "timeliness" as that term is used under these rules. On the undisputed factual record, not only did Paul meet all the requirements of intervention as of right, but also plainly established that permissive intervention is warranted to permit him to become a party in the underlying case.

A movant seeking to intervene under Rule 24(a) must meet a four factor test: (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests. The District Court properly found that Paul had established the same legally protected interest in the action as the other intervenors, "namely, avoiding execution by an allegedly flawed lethal injection protocol." JA225. The record also established that Paul's clear interest in the outcome of the lawsuit would be impaired if intervention were denied, since an unfavorable outcome would impair Paul's interest "in the sense that countering such a ruling could be 'difficult and burdensome.'" JA227. The District Court further recognized that

Paul sought to intervene at a time when "it may be that [his] intervention would not disrupt the current litigation to the detriment of the existing parties."  JA229.

The Court concluded, however, that Paul's motion was untimely because Paul had waited to intervene until the Supreme Court denied review of his *habeas* petition.  *Id*.  The Court further held that intervention was not warranted because any such impairment was the result of "Paul's failure to file timely his own method of execution challenge" rather than the denial of intervention by the Court.  JA227. Finally, the Court held that Paul had not carried his "minimal burden of showing that if he cannot intervene, his interest will be inadequately represented."  JA230 (internal citation omitted).

The Court erred as to each one of these findings.  First, as to timeliness, the Court looked solely at the amount of time that had passed between the filing of the action and Paul's motion to intervene, as opposed to looking at all of the circumstances surrounding the litigation.  Under Rule 24, the "timeliness" factor is satisfied because allowing Paul to intervene would not adversely affect the other parties to the litigation or interfere with proceedings already underway.  At the time that Paul sought to intervene, the *Roane* litigation has not yet even progressed past discovery, and Paul expressly stated that he did not intend to challenge any decisions already made in the case.

15

The Court also erred when it found that Paul's rights would not be impaired by the denial of his motion to intervene, but rather because of his late filing of his motion, even though it conceded that Paul's interest "may be impaired" if his motion was to be denied.  JA227.  The District Court implicitly acknowledged that Paul satisfied the impairment prong, when it stated as an adverse ruling in the underlying case would be difficult for Paul to overcome.  Finally, the Court erred when it found that Paul was adequately represented by the current parties in the case, even though without intervention, Paul could be executed before the other plaintiffs prevail in the *Roane* litigation.  The fact that Paul, unlike the other intervenors, remains subject to execution at any time is more that sufficient to satisfy his "minimal" burden under the fourth prong of the test.

The District Court's analysis of permissive intervention suffers from the same defects.  By incorrectly finding that Paul's motion was untimely (just as it did for intervention as of right), the District Court abused its discretion even in the highly differential context of a motion for permissive intervention.

## STANDARD OF REVIEW

The District Court's decision to deny intervention is reviewed under three different standards, depending on the nature of the determination at issue.  *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003).  Pure issues of law are reviewed *de novo*, and findings of fact are reviewed for clear error.  *Id.*

Determinations that "involve a measure of judicial discretion," such as timeliness or adequacy of representation, are reviewed for abuse of discretion. *Id.* A district court abuses its discretion *per se* when it fails to consider a relevant factor, applies the wrong legal standard, or relies on clearly erroneous findings of fact. *Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1497 (D.C. Cir. 1995).

## ARGUMENT

Paul filed a timely motion to intervene, and as discussed *infra*, satisfied all four elements of the test for intervening as of right under Rule 24(a) as recognized in this Circuit. In denying Paul's motion to intervene, the District Court erred in its finding that Paul failed to meet three of the four elements, namely that his motion was timely, that denial of his motion to intervene as of right would impair his rights, and that his rights were not adequately represented by the current parties in the litigation. Additionally, because the District Court erred in its determination as to timeliness, the denial of Paul's motion for permissive intervention was also in error.

## I.  THE DISTRICT COURT ERRED IN DENYING PAUL'S MOTION FOR INTERVENTION AS OF RIGHT

Rule 24(a)(2) of the Federal Rules of Civil Procedure governs intervention as of right. The full text of Rule 24(a) is as follows:

> (a) Intervention of Right: On timely motion, the court must permit anyone to intervene who:

> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)

To assess whether a party has satisfied Rule 24(a)(2)'s requirements, courts of this Circuit must apply a four factor test: (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests.[4] *Karsner*, 532 F.3d at 885; *see also Fund for Animals*, 322 F.3d at 728; *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998).   All four elements must be met for a putative intervenor to be successful, and the District Court must make a determination as to each one. *See SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998) (holding that failure to meet one of the factors is alone sufficient deny intervention as of right); *see also William & Humbert Ltd. v. W. & H. Trade*

---

[4]  A party seeking to intervene under Rule 24(a) in this circuit must also establish Article III standing.  *See Fund for Animals*, 322 F.3d at 731-32.  As the District Court noted, Paul's standing in this case is not in dispute.  JA224-25.

*Marks (Jersey) Ltd.*, 840 F.2d 72, 75 (D.C. Cir. 1988) (remanding to district court for failure to make a determination as to the timeliness of the motion to intervene when all other factors were satisfied).

The second factor here is not in dispute, *i.e.*, that Paul, as a federal death row inmate, has a "clear interest in the outcome of this suit." JA226. In rejecting Paul's motion, the District Court fundamentally misapplied the remaining factors. On remand, the court continued to apply a definition of "timeliness" that is inconsistent with this Court's precedents, confirming that but for the date on which Paul filed his motion, he would today be a party to the *Roane* litigation.

Accordingly, for the reasons discuss below, this Court should vacate the District Court's order and direct that Paul be permitted to intervene.

## A.      The District Court Misapplied The Timeliness Standard

In denying Paul's motion to intervene, the District Court relied principally on the timeliness factor; a factor the government did not contest in opposing Paul's motion. *See* JA224-25, 232. In arriving at its conclusion, the District Court misapplied the applicable legal standard and abused its discretion, necessitating reversal and remand.

As this Court has held many times, "timeliness" as it is used in Rule 24(a) is not simply a measure of how much time has elapsed. Instead,

> timeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time

19

> elapsed since the inception of the suit, the purpose for
> which intervention is sought, the need for intervention as
> a means of preserving the applicant's rights, and the
> probability of prejudice to those already parties in the
> case.

*Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (*quoting United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980); *Nat'l Res. Def. Council v. Costle*, 561 F.2d 904, 908 (D.C. Cir. 1977). "It is settled -- particularly where intervention is sought as of right -- that the amount of time which has elapsed since the litigation began is not in itself the determinative test of timeliness." *Hodgson v. United Mine Workers*, 473 F.2d 118, 129 (D.C. Cir. 1972); *see also NAACP v. New York*, 413 U.S. 345, 366 (1973) (holding that whether a motion to intervene is timely "is to be determined from all the circumstances" of the litigation). "Rather the court should also look to the related circumstances, including the purpose for which intervention is sought, the necessity for intervention as a means of preserving the applicant's rights, and the improbability of prejudice to those already parties in the case." *Hodgson*, 473 F.2d at 129. Timeliness, in other words, is a function not just of mere chronological time, but also of the nature of the litigation, the nature of the intervenor, and the effect of intervention on the other parties to the litigation.

Consistent with this understanding, courts in this Circuit have frequently found a motion to intervene timely even when filed during the end stages of

litigation. In *Smoke*, for example, the intervenor-appellants moved to intervene after summary judgment had been granted against the defendants, and after the defendants indicated that they did not plan to appeal. The movant sought to intervene in order to take up the appeal. *Smoke*, 252 F.3d at 469-70. This Court found that the intervenor-appellants' motion to intervene, even though it came after summary judgment had been granted, was timely because prior to the judgment, the intervenor-appellants had no reason to intervene. *Id*. at 471. This Court concluded that "a post-judgment motion to intervene in order to prosecute an appeal is timely" when "the potential inadequacy of representation came into existence only at the appellate stage." *Id*. (internal citation omitted).

In *Costle*, this Court held a motion to intervene was timely even though it was filed after a settlement had been reached, because the movants sought to "ensure their full rights of participation in the 'crucial decisions' to be made before the District Court in the oversight and implementation of the [settlement] agreement." *Costle,* 561 F.2d at 907. At issue in *Costle* was the EPA's duty under Section 307(a) of the Federal Water Pollution Control Act Amendments of 1972. *Id.* at 906. Following dismissal of the complaint by the district court, a successful appeal, and a remand, the parties reached a settlement and so informed the district court. *Id.* Once the intervenors became aware of the settlement, they moved to intervene in order to participate in the implementation of the settlement. *Id.* at 907.

The district court denied the application, ruling that intervention was untimely because of "the age of the cases, (and) the fact that they are on the verge of settlement." *Id.* (internal quotations omitted). This Court reversed, holding that "[i]n relying upon the age of the case and its closeness to settlement, the [District] Court failed to take into account 'the purpose for which intervention (was) sought,' namely, the concern for participation in the implementation of the agreement." *Id*. (quoting *Hodgson*, 473 F.2d at 129).

In other words, it was error for the court to rely on the amount of time that had elapsed since the case began as dispositive of the timeliness prong. This Court additionally held that even if there had been a delay in seeking intervention because the intervenors should have known much earlier of the potential effect of the settlement, that delay would still not be dispositive. *Id.* at 908. The determination as to timeliness would still have to weigh "whether that delay would unfairly disadvantage the original parties." *Id.* Since the intervenors did not seek to reopen settled issues in the case but sought to participate in the implementation of the settlement, their intervention was timely. *Id.* at 908

Similarly, in *Hodgson,* this Court found a motion timely when filed "after the action was tried, and some seven years after it was filed." *Hodgson*, 473 F.2d at 129. In *Hodgson*, members of the United Mine Workers of America ("UMWA") attempted to intervene in a case brought by the Secretary of Labor

22

against the UMWA challenging allegedly unlawful trusteeships. *Id*. at 121. The movants did not attempt to intervene until after trial had been completed and the district court had taken the case under advisement. *Id*. at 122. Much like Jeffrey Paul, the intervenors "expressly disavowed any desire to reopen any previously-litigated question" and sought only to participate in the subsequent stages of the case. *Id*. at 129.

In reversing the district court and remanding the case with directions to permit intervention in *Hodgson*, this Court again found that the stage of the case and the amount of time that had elapsed was not dispositive. It instead considered the fact that there was no untoward burden on the parties or the court, that the intervenors had an interest in the scope of relief to be afforded by the forthcoming decision of the court, and the fact that the intervenors would "have to live with whatever remedies the District Court fashions." *Id*. at 130. As a result, this Court determined that "the scale weighs heavily in [intervenors'] favor on the issue of timeliness. *Id*. at 129-30; *see also LaRouche v. Federal Bureau of Investigation*, 677 F.2d 256, 257 (2d Cir. 1982); *Janusziewicz v. Sun Shipbuilding & Dry Dock Co*., 677 F.2d 286, 293 (3rd Cir. 1982).

These cases demonstrate that, contrary to the District Court's analysis below, a motion to intervene is not "untimely" simply because of how much time the movant waited to seek intervention or how much time has elapsed since the

litigation began.  To the contrary, as in *Castle*, it would be error for a district court to deny intervention solely on the amount of time that the movant waited to file -- even if the case was on the verge of settlement or final disposition.  This is so even if the facts suggest that the movant was in some sense responsible for the delay.

Turning to the facts of the instant case, it is readily apparent that under the proper definition of timeliness, Paul's motion to intervene was in fact timely.  Paul moved to intervene when the *Roane* litigation was still in the midst of discovery, and Paul specifically stated in his moving papers that he had no intention of challenging any of the decisions already made in the litigation.  As discussed *supra,* the existing parties will not be prejudiced in any way by Paul joining the litigation at this stage.  To the contrary, between the filing of Paul's motion and the present date, practically nothing has occurred in the case below and, in fact, since April of 2011, this case has been at a standstill as the government conducts its ongoing review of the current federal execution protocol.  Even though Paul filed his motion more than three years after the initiation of this case, his filing is not untimely when viewed in light of the minimal, if any, burdens his intervention would place on the existing parties.

By denying Paul's motion on timeliness grounds, the District Court committed the type of error identified in *Castle*, *Hodgson*, and *Smoke*.  The court held that Paul's motion to intervene was untimely solely because Paul waited until

24

2009 (after his § 2255 petition was denied) to file his motion even though, according to the District Court, he "could have been in a position to challenge the method of his execution in 2001" and "could have sought intervention in this case well before now." JA229. The District Court did not analyze the effect of this alleged delay on the original parties to the litigation, nor did it explain how allowing Paul to intervene could possibly interfere with proceedings already underway in this case, which had proceeded in fits and starts since its inception. In fact, to the extent it considered these factors at all, the District Court actually concluded that "it *may* be that Paul's intervention would *not* disrupt the current litigation to the detriment of the existing parties." JA229 (emphasis added). By failing to consider whether Paul's delay would "unfairly disadvantage the original parties," *Costle,* 561 F.2d at 908, the District Court erroneously treated "the amount of time which has elapsed since the litigation began" as the "determinative test of timeliness." *Hodgson*, 473 F.2d at 129. In doing so, the District Court flatly contradicted this Court's prior holdings and thus committed a clear error of law.

The District Court's conclusion that Paul's motion was untimely because he could have challenged his method of execution upon the conclusion of his direct appeal in 2001 is moreover inconsistent with the District Court's prior ruling on the government's motion for judgment on the pleadings in this case. *See* JA163.

The government contended that the plaintiffs were time barred from challenging the method of their execution by the general six-year statute of limitations on lawsuits against the government. JA169. In denying the government's motion, the Court rejected the argument that a method-of-execution challenge accrues immediately upon completion of an inmate's direct appeal. JA171, 187. That holding cannot be squared with the Court's assertion that Paul's motion to intervene was untimely because he could have filed such a challenge in 2001, upon completion of his direct appeal. *See* JA228-29.

As noted above, the District Court allowed three similarly situated federal death row inmates to intervene in the case before denying Paul's motion. Like Paul, all three intervenors waited between seven and eight years after the conclusion of their direct appeals to intervene. Like Paul, all three intervenors filed their motions after the conclusion of their post-conviction proceedings (not just their direct appeals). And like Paul, the three other intervenors waited more than one year after the commencement of the *Roane* litigation to file their motions to intervene. The District Court engaged in no analysis that would distinguish Paul, who followed the same procedural steps as these other intervenors. In spite of the well-established concept of timeliness in this Circuit, which contemplates not only the period of time that elapsed from the filing of the complaint to the intervention, but also other factors such as the potential burden, if any, on the

26

initial parties, and the purpose of the proposed intervention, the District Court instead focused solely on the fact that nine years had elapsed between the conclusion of Paul's direct appeal and the filing of his motion to intervene. "An appellate court, in reviewing for an abuse of discretion, must consider 'whether the decision maker failed to consider a relevant factor, whether he [or she] relied on an improper factor, and whether the reasons given reasonably support the conclusion.'" *Kickapoo Tribe*, 43 F.3d at 1497 (quoting *Johnson v. United States,* 398 F.2d 354, 365 (D.C. 1979)). The Court's improper reliance on the time that had elapsed in and of itself, and its corresponding failure to adequately consider the factors required by the Court's prior case law constitute reversible error. To make matters worse, the result of the District Court's analysis was the exclusion of Paul as a plaintiff-intervenor, despite the presence of three identically situated others. That is the essence of abuse of discretion. *Id.*

## B.    The District Court Erred In Its Analysis Of Impairment

The impairment prong of the four-factor test focuses on the "practical consequences" of denying intervention, namely the effect of the litigation on the movant's legally protected interest. *Fund for Animals*, 322 F.3d at 736. The test for whether disposition of the action will impair the movant's ability to protect his interest is meant to be practical, rather than formalistic. Wright & Miller, *Federal Practice and Procedure* § 1908.2 (3d ed. 2012). In fact, Rule 24 was amended in

1966 to "repudiate the view … that intervention must be limited to those who would be legally bound as a matter of res judicata." *Id*. Indeed, in *Fund for Animals,* this Court held that it reads this factor, "'as looking to the practical consequences of denying intervention, even where the possibility of future challenge to the regulation remain[s] available.'" *Fund for Animals,* 322 F.3d at 735 (quoting *Costle*, 561 F.2d at 909 (internal quotation omitted)). Indeed, this Court in *Fund for Animals* held that the impairment factor will be met "[r]egardless of whether the [movant] could reverse an unfavorable ruling by bringing a separate lawsuit," and "it is not enough to deny intervention under 24(a)(2) [if] applicants may vindicate their interests in some later, albeit more burdensome, litigation." *Id*. (citing *Costle*, 561 F.2d at 910).

The "practical consequences of denying [Paul's] intervention" can be clearly seen in the government's December 22, 2010, notice of Paul's execution. JA254-55. The *Roane* plaintiffs and the three other intervenors all have had their executions stayed pending the outcome of the *Roane* litigation. In denying Paul's motion to intervene, the District Court also denied Paul's motion for a preliminary injunction staying his execution. JA233 n.2. The government is moving towards a resolution of its determination as to the federal lethal injection protocol, and once it has completed this process, the government will be able to carry out Paul's execution.

Indeed, the District Court found as a matter of fact that "Paul's interest […] may be impaired by an unfavorable outcome of this litigation in the sense that countering such a ruling in a subsequent case could be difficult and burdensome" -- a finding that should be dispositive on this prong for Paul under *Fund for Animals*. JA232 (internal quotation omitted).   Yet, the District Court concluded that the impairment factor had not been met.  The District Court reasoned instead that Paul "failed to demonstrate that an impaired interest would stem from being denied intervention rather than from his own failure to timely protect his interest."  JA222. The District Court's concluded that "it [was] Paul's failure to file timely his own method of execution challenge [rather than the court's denial of Paul's motion to intervene] that will have impaired his interest."  JA227.

This reasoning was flawed, for two reasons.   First, it is not possible for Paul's interest to be both impaired and not impaired by the instant action.  The test under *Fund for Animals* for impairment is simply whether the present action threatens to impair a legally protected interest.  The Court found that Paul satisfied this test because, in its own words, "countering" an adverse ruling in the *Roane* action would be "difficult and burdensome."  *Id*.  The impairment prong does not direct the Court to look further to determine whether or not the intervenor could have filed his own earlier action and thus avoided the impairment.  Second, the District Court's analysis erroneously conflated the impairment and timeliness

factors by concluding that any impairment to Paul's interest was ostensibly caused by his own "failure to file timely his own method of execution challenge." *Id*. As noted above, the impairment prong focuses solely on the "practical consequences" of denying intervention, not the timeliness of the motion to intervene.

In the proceedings below, the government opposed Paul's motion only as to this factor, arguing that "Paul's request to intervene as of right should be denied because he cannot demonstrate that disposition of this suit will impede his ability to protect his interest." JA206. The government contended that Paul should instead have sought relief before the United States District Court for the District of Arkansas, the district in which he was convicted and sentenced, and that the disposition of the *Roane* litigation would in no way impair his ability to do so. *Id*. In fact, the whole of the government's initial opposition to Paul's intervention is based on the mistaken concept that Paul could have challenged the method of his execution before the District Court for the Western District of Arkansas. The government argued there *may* be a statute of limitations issue as Paul's direct appeal concluded in 2001 which would be properly heard by the District Court of the Western District of Arkansas. *Id.* [5] However, the government fails to cite to

_____

[5] The government did not raise this argument in its' Motion for Summary Affirmance, but brought it back in its opposition to Paul's Motion to Govern.

(Cont'd on following page)

any applicable statute of limitations that may be relevant in this matter, and simply states that such an issue should be addressed by the District Court for the Western District of Arkansas.[6]  Notably, the District Court below made no mention of any statute of limitations issue, and instead focused solely on the time that had elapsed between the conclusion of Paul's direct appeal and the filing of his motion to intervene.

_____

(Cont'd from preceding page)

In both instances the government fails to acknowledge that the District Court, in denying the government's motion on the pleadings, ruled that statute of limitations as to the *Roane* complaint had not run, implying that the statute of limitations had not run as to Paul when he initially moved to intervene.

[6]  One of the cases the government cited in support of its statement that there *may* be a statute of limitations issue, *Jones v. Allen*, 483 F. Supp. 2d 1142 (M. D. Ala. 2007) in fact held that the statute of limitations did not bar an action challenging lethal injection as cruel and unusual punishment violative of the Eighth and Fourteen Amendments because the event triggering the applicable statute limitations, the infliction of the harm, had not yet occurred. 483 F. Supp. 2d at 1148-49.

In the other case that the government cites in its reference to a potential statute of limitations issue, *Smith v. Johnson*, 2006 WL 644424 (S.D. Tex. Feb. 13, 2006), the court did not dismiss the plaintiff's complaint on statute of limitations grounds, but rather dismissed the complaint because the plaintiff had filed a 42 U.S.C. § 1983 civil rights challenge to the method of his execution after his *habeas* petition was denied.  The District Court in *Smith* acknowledges that the Supreme Court had recently granted *certiorari* to *Hill v. McMDonaugh* on similar grounds, and in fact the Supreme Court in *Hill* found that such an action was permissible, therefore abrogating the holding in *Smith*.

The District Court further committed clear error on the impairment prong by finding that "Paul has never claimed that intervening here is his only avenue for relief, since he acknowledges that he remains free to file his own challenge where he was tried." JA289. That statement is not supported by the record. In his reply memorandum in support of his motion to intervene, Paul argued that if he tried to bring a suit elsewhere challenging the constitutionality of the federal government's lethal injection protocol, such a suit would likely be challenged for lack of venue. *See* JA215-16. Paul's statement was based on controlling D.C. Circuit precedent, under which venue for such a suit almost certainly would not lie in the Western District of Arkansas, "where he was tried." Under 28 U.S.C. § 1391(e)(1), a civil action against a federal officer or agency may be brought in any judicial district in which (1) a defendant resides; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) the plaintiff resides. Under the law of this Circuit, Paul "resides" where he is confined, in Terre Haute, Indiana. *See In re Pope*, 580 F.2d 620, 622 (D.C. Cir. 1978). Contrary to the District Court's assertion, under the law of this Circuit, Paul therefore could not "file his own challenge where he was tried." Nor has the District Court previously required the three other would-be intervenors to seek relief "where they were tried," as the three inmates already permitted to intervene were all tried in other districts. Because this Circuit is in fact the proper Circuit in which Paul should challenge the method

of his execution, denying his intervention indeed impairs his interests.   This
holding misstates the law of this Circuit and as such is in error warranting remand.

The District Court's determination that Paul's interests were not impaired
(1) because any impairment was the result of Paul waiting to filing an action
challenging the lethal injection protocol or intervening in the case below, or (2)
because Paul could bring an action challenging the lethal injection protocol in the
District Court for the Western District of Arkansas constitutes an abuse of
discretion and should be reversed.

## C.     The District Court Misapplied The Adequacy Of Representation Standard

The District Court further erred in holding that Paul failed to demonstrate
that his interest would not be adequately represented by the other *Roane* plaintiffs.
As the Supreme Court has stated, the burden of satisfying this factor is a "minimal"
one: "The requirement of the Rule is satisfied if the applicant shows that
representation of his interest 'may be' inadequate."   *Trbovich v. United Mine
Workers*, 404 U.S. 528, 538 n.10 (1972); *see also Dimond v. District of Columbia*,
792 F.2d 179, 192 (D.C. Cir. 1986).   This circuit has characterized the burden of
meeting this factor as "'not onerous'" *Fund for Animals*, 322 F.3d at 736 (quoting
*Dimond*, 792 F.2d at 19); *see also American Tel. & Tel. Co.,* 642 F.2d at 1293
(stating that a petitioner "ordinarily should be allowed to intervene unless it is clear
that the party will provide adequate representation for the absentee") (internal

33

quotation omitted)). In *Fund for Animals*, this Court found that interests of one party were not adequately represented by another even though the two parties shared the same counsel. *Fund for Animals*, 322 F.3d at 737. "[E]ven a shared general agreement . . . does not necessarily ensure agreement in all particular respects, and [t]he tactical similarity of the present legal contentions of the [parties] does not assure adequacy of representation or necessarily preclude the [intervenor] from the opportunity to appear in [its] own behalf." *Id.* (internal citations and quotations omitted). Indeed, this Court has stated that the threshold for finding that an intervenor's interests are not adequately represented by the other parties is low. *Id.* at 736.

The record makes plain that Paul's motion meets this minimal threshold. On December 22, 2010, while Paul's motion to reconsider the denial of intervention was pending, the government filed a notice of its intent to set an execution date for Paul no sooner than April 22, 2011. *See* JA254-55. The notice asserted that "as of this date, Paul is not a party to [the *Roane*] suit nor has he received a stay barring his execution in another jurisdiction." JA254. Paul's execution still has not been stayed, unlike the other intervenors in this case, and, should the government successfully revise the lethal injection protocol as discussed *infra*, Paul would be at imminent risk to be executed while this appeal is pending.

While a lethal injection protocol is not presently in place, "[t]he Department of Justice and the Bureau of Prisons are continuing to assess matters as relates to revision or amendment of the Bureau's lethal injection protocol." JA291. Once this assessment is complete, Paul will face an imminent execution date -- regardless of whether the *Roane* challenge to the protocol has been decided on the merits. Absent Paul being permitted to intervene in this case and to have his execution stayed, like the plaintiffs and other intervenors, for the Department of Justice could seek to set an execution date for Paul any time, as its prior notice stated that it would be at least 120 days from the filing of the notice on December 12, 2010. JA255. The existing plaintiffs face no such urgency, and thus could embark on a different litigation strategy and schedule. Any delay in the *Roane* proceedings thus works to Paul's detriment, as it could create the possibility that he could be executed under an unconstitutional protocol before the litigation reaches that conclusion on the merits of the case. Paul obviously does not stand to benefit from a ruling that comes after he has been executed.

Despite this minimal threshold, the District Court held that Paul did not meet the adequacy prong because the "congruence of interest" between Paul and the *Roane* plaintiffs was "virtually, if not totally, complete." JA230. This holding was in error. The Court's analysis overlooks a simple, yet crucial factual difference between Paul and the existing *Roane* plaintiffs: the *Roane* plaintiffs have all had

35

their executions stayed, meaning that any delay in the underlying proceedings extends the period during which they can no longer be executed. Paul, on the other hand, has not had his execution stayed, and the government has in fact noticed its intent to set his execution date. *See* JA254-55. Any tactical decision by existing plaintiffs that extends the litigation could jeopardize Paul's interest in obtaining a decision on the merits before his execution date. In light of the "minimal" showing required to demonstrate that Paul's interest will not be adequately represented by the remaining parties, the government's notice of its intent to set Paul's execution date while the executions of the other *Roane* plaintiffs remain stayed is plainly sufficient to satisfy this standard.

The District Court, in its order denying Paul's motion to intervene as of right, found that he had only satisfied one of the four factors necessary for intervention as of right, i.e., that he had a legally protected interest in the *Roane* litigation. As shown *supra*, under this Circuit's case law, Paul's motion was timely when taking into consideration the current procedural posture of the case, the potential burden on the current parties to the case, and the purpose for his intervention. Additionally, the District Court itself found, although did not follow its own determination, that denying Paul's motion to intervene would impair his ability to protect his interest. Finally, Paul has shown that he has met the "minimal" burden of showing that his interests are not adequately represented by

the current parties to the *Roane* litigation.  As Paul has met all four factors required for intervention as of right, the District Court's determination should be reversed, and this case remanded with instructions to permit Paul to intervene.

## II.   THE DISTRICT COURT ERRED IN DENYING PAUL'S MOTION FOR PERMISSIVE INTERVENTION

Rule 24(b) of the Federal Rules of Civil Procedure also permits intervention even if the moving party does not satisfy Rule 24(a).  Rule 24(b) permits intervention "[o]n timely motion . . . [to] anyone  . . . who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).  Rule 24(b) also directs the District Court, "[i]n exercising its discretion . . . [to] consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

Paul alternatively moved to intervene under Rule 24(b), which the District Court also denied.  On appeal, a motions panel of this Court vacated the District Court's order on permissive intervention and remanded for further findings because the District Court failed to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Order, July 6, 2012 at 1.  On remand, the District Court found that Paul's motion would not unduly delay or prejudice the original parties' rights (JA287), but held that the untimeliness of Paul's motion outweighed any factors in favor of Paul's motion for permissive intervention.  JA288.  This was error.

A district court may permit a party to intervene under Rule 24(b) if the party can show "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr., Inc*., 146 F.3d 1042, 1046 (D.C. Cir.1998).  As to an independent ground for subject matter jurisdiction, the Court "may exercise pendent jurisdiction to reach the issue of permissive intervention because it is inextricably intertwined with the issue of intervention as of right." *Alternative Research and Dev. Found*, 262 F.3d at 410 (citing *Vitamins Antitrust Class Actions,* 215 F.3d 26, 31 (D.C. Cir. 2000)). Like intervention as of right, a District Court's decision to deny permissive intervention is reviewed for abuse of discretion. *See Prudential*, 136 F.3d at 156 n. 7.  A review of the District Court's original opinion and its opinion on remand shows that its discretion was abused.

In its original opinion on permissive intervention, the District Court held that, although Paul's claim "has common questions of law and fact with the main action," his motion was untimely because "he has waited nearly four years after

this action was filed to seek intervention."[7]  JA232.  The District Court found that

this untimeliness "weighs heavily against intervention."  *Id.*

On remand, the District Court expressly acknowledged that "Paul's claim

that his intervention would not disrupt the current litigation to the detriment of the

existing parties *could* be right," although the Court described such a claim as

"risky speculation."  JA287-88 (emphasis added).  The Court went on to hold that

such "risky speculation was not enough to overcome and outweigh Paul's

substantial failure to satisfy the timeliness prerequisite."  JA288.  The District

Court held that Paul could have challenged the method of his execution in 2001,

after his direct appeal; in 2003 using information then available that the federal

government's method of execution used too little anesthetic; closer on the heels of

the *Roane* complaint being filed in 2005, like the other intervenors; or in 2007

when issues relating to how the execution protocol was administered were raised in

the *Roane* litigation.  JA288-89.  Because Paul failed to challenge the method of

---

[7]  The District Court analyzed timeliness for purposes of permissive intervention
under the same standard as that under intervention as of right.  JA231-32.  The
Ninth Circuit has held that timeliness under permissive intervention is to be
construed more strictly than under intervention as of right (*see League of Latin
Amer. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997), but there is no
controlling case law in this Circuit as to how timeliness under permissive
intervention should be treated.  This Court should not adopt the stricter
approach.

his execution at any of these junctures, the District Court held that his intervention was untimely.  Although the District Court's Order was intended to clarify its prior ruling, the Order in fact provides further support for Paul's argument that the District Court abused its discretion in denying his motion for permissive intervention.

The District Court's order on remand clearly shows that, despite this Court's instruction, the District Court made no finding that permitting Paul to intervene would *actually* delay or prejudice adjudication of the original parties' rights.  Such a determination is no small matter in a case such as this one, in which the underlying litigation has effectively been stayed for the past two and a half years.  On the undisputed factual record, it is not "risky speculation" to state that Paul's participation in a case currently limited to the filing of monthly status reports by the government will not "disrupt the current litigation to the detriment of the existing parties.  The *Roane* litigation is, and has been for almost a year, at an effective standstill as the Department of Justice and the Bureau of Prisons determine how to proceed with the current lethal injection protocol.  Permitting Paul to intervene at this stage will have no effect on those deliberations, or on the progress of the case, which still has not even completed discovery.

There is nothing weighing against Paul's permissive intervention.  Paul filed a motion at a time when it would have no disruptive effect on the litigation.  Even

now, more than three years later, his intervention would have no disruptive effect. His claim shares common questions of law and fact with the main action, and Paul's intervention would not unduly delay or prejudice the adjudication of the original parties' rights.  Paul has met all three factors necessary for permissive intervention, and as the District Court's denial is premised solely on an erroneous interpretation of the timeliness standard, this Court should find that the District Court abused its discretion in denying Paul's motion for permissive intervention.

Even though the granting or denial of a motion for permissive intervention is highly discretionary, there is no legally reasonable exercise of that discretion on the present record that could support the denial of Paul's motion.  In *National Children's Center*, this Circuit, while acknowledging that the "reversal of a district court's denial of permissive intervention is a very rare bird indeed" (internal quotation omitted), overturned a denial of permissive intervention after the district court had previously granted intervention for three other individuals who had moved to intervene for the same purpose.  *See* 146 F.3d at 1048.  The sole factor that the District Court weighed against Paul's permissive intervention was the timeliness factor, based on the same improper definition applied in the Rule 24(a) context.  For the reasons discussed above, the District Court incorrectly focused on the time that had elapsed, rather than the effect of intervention on the case.  This Court should find, therefore, that the District Court abused its discretion in denying

Paul's motion for permissive intervention, and remand to the District Court with instructions to permit Paul to be allowed to intervene in the case.

## CONCLUSION

For the reasons set forth above and any others appearing to the Court, the opinion of the District Court should be vacated and the case remanded to the District Court with instructions to allow Mr. Paul to intervene.

Respectfully submitted,

/s/

Abbe David Lowell
Keith M. Rosen
**CHADBOURNE & PARKE LLP**
1200 New Hampshire Ave. NW
Washington, DC  20036
(202) 974-5605
ADLowell@chadbourne.com

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)B), because it contains 10,129 words excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirement of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using the 2007 version of Microsoft Word in Times New Roman type style and was written using 14-point font for text and footnotes.

_____/s/_____

Abbe David Lowell

**CHADBOURNE & PARKE LLP**

*Counsel for Appellant*

CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of April, 2013, two copies of the foregoing Brief for Movant - Appellant were served on counsel for Defendants - Appellees via Federal Express to the below address, as well as electronically via this Court's Electronic Case Filing System.

Benton Gregory Peterson
R. Craig Lawrence
Assistant U.S. Attorneys
U.S. Attorney's Office
(USA) Civil Division
555 4th Street, NW
Washington, DC 20530
Phone: 202-514-7159

*Counsel for Defendants - Appellees*

_____/s/_____
Abbe David Lowell
CHADBOURNE & PARKE LLP

*Counsel for Appellant*